# United States District Court

## WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA

v.

**DWAYNE ROBARE**

**WARRANT FOR ARREST**

04-1737-CBS

CASE NUMBER: **CR04-229L**

To:   The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ____**DWAYNE ROBARE**____ and bring him or her forthwith

to the nearest magistrate to answer a(n) **INDICTMENT** charging him or her with:

**Conspiracy to Defraud the Untied States**

in violation of Title __18__ United States Code, Section(s) ____371____

__James Kelly__
Name of Issuing Officer

__Deputy Clerk__
Title of Issuing Officer

Signature of Issuing Officer

MJB

__May 11, 2004 at Seattle, Washington__
Date and Location

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

CERTIFIED TRUE COPY
ATTEST: BRUCE RIFKIN
Clerk, U.S. District Court
Western District of Washington

By_____ Deputy Clerk

Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

MAY 11, 20 04

BRUCE RIFKIN, Clerk

By _____ Deputy

CERTIFIED TRUE COPY
ATTEST: BRUCE RIFKIN
Clerk, U.S. District Court
Western District of Washington

By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA

    Plaintiff,

    v.

DANIEL ANDERSEN,
DAVID STRUCKMAN,
LORENZO ("ZO") LAMANTIA
        aka LORENZO MILANO,
KULDIP SINGH
        aka KAY SINGH,
        aka KAY MILANO, and
DWAYNE ROBARE

    Defendants.

CR04 0229 ∠

CASE NO.

INDICTMENT

The Grand Jury charges that:

## COUNT 1

## A. Introduction

At all relevant times to this Indictment:

1.    "Global Prosperity" was an organization founded by DANIEL ANDERSEN and DAVID STRUCKMAN in 1996 which, during its existence through May 2002, was in the business of selling a 12-part audiotape/cd series and seminar tickets to offshore seminars. At the seminars, vendors promoted, among other things, bogus trust packages and other anti-tax schemes advocating fraudulent methods of eliminating one's income taxes. During its existence, Global Prosperity received gross receipts in excess of fifty

1   million dollars ($50,000,000). Global Prosperity was known by various names including

2   Global Prosperity Marketing Group, the Global Prosperity Group and the Institute of

3   Global Prosperity (hereinafter, referred to as "Global Prosperity").

4          2.     DANIEL ANDERSEN is a United States citizen who resided in

5   Leominster, Massachusetts and Oxnard, California. DANIEL ANDERSEN co-founded

6   Global Prosperity in 1996.

7          3.     DAVID STRUCKMAN is a United States citizen who resided in Renton

8   and Issaquah, Washington. Along with DANIEL ANDERSEN, DAVID STRUCKMAN

9   co-founded Global Prosperity in 1996.

10         4.     LORENZO (ZO) LAMANTIA, aka LORENZO MILANO, is a United

11  States citizen who resided in Mountain Ranch, California. LORENZO LAMANTIA

12  became a recognized founder of Global Prosperity in July 1998.

13         5.     KULDIP SINGH, aka KAY SINGH, aka KAY MILANO, is a citizen of

14  Fiji who resided with LORENZO LAMANTIA and together they held themselves out as

15  husband and wife. KULDIP SINGH provided customer service assistance for Global

16  Prosperity through a bogus trust named International Free Enterprise Associates (IFEA).

17         6.     DWAYNE ROBARE is a United States citizen residing in Leominster,

18  Massachusetts. DWAYNE ROBARE maintained and operated Global Prosperity's

19  teleconferencing system through a bogus trust named Independent Diversity

20  Entrepreneurs & Associates (IDEA).

21  **The Business of Global Prosperity**

22         7.     Global Prosperity sold the following goods and services:

23         a.     Global 1 (G1) - a 12-part audiotape/cd series retail priced at $1,250

24  that was advertised as a comprehensive home-study course featuring "wealth-building"

25  strategies. These strategies included false methods of income tax elimination through

26  various means including, (1) "voluntary withdrawal" from the jurisdiction of the United

27  States; (2) placing assets in purported foreign or common law trusts without giving up

28  ownership or control of the assets.

Indictment - 2
2000R01456

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1        b.     Global 2 (G2) - a seminar ticket to a three-day offshore seminar

2  retail priced at $6,250. The Global 2 event was sponsored by Global Prosperity and

3  advertised as an opportunity for G2 attendees to apply the wealth building strategies

4  discussed on the G1 audiotape/cd series. Independent vendors touted as "experts" paid

5  Global Prosperity a fee to promote fraudulent tax elimination schemes including the sale

6  of bogus trusts and programs designed to assist G2 attendees to "withdraw" from the

7  United States' jurisdiction.

8        c.     Global 3 (G3) - a seminar ticket to a five-day offshore seminar retail

9  priced at $18,750. The Global 3 event was sponsored by Global Prosperity and advertised

10  as advanced training in implementing wealth building strategies that featured the same

11  fraudulent vendors and schemes promoted at the Global 2 events.[1]

12        d.     Global 4 (G4) - a seminar ticket to a private, invitation-only seminar

13  held at Jekyll Island, Georgia, in November 2000, retail priced at $37,000. The private

14  three-day seminar was hosted by Global Prosperity for its top salespeople.

15      8.     Global Prosperity also received income from Global membership fees as

16  well as fees for two services it offered: (1) a teleconferencing service maintained and

17  operated by DWAYNE ROBARE through IDEA; and (2) a customer service program.

18      9.     Global Prosperity primarily marketed and sold its products through a

19  network of distributors or retailers modeled after the multi-level marketing design.

20  Global retailers sold products to customers who in turn solicited new buyers. Global

21  retailers were eligible to keep 80% to 90% of income generated by their own sales after

22  becoming "qualified" which occurred after making a requisite number of G1, G2, or G3

23  sales (it varied between 2 and 7 sales). In addition, "Qualified Retailers" also profited

24  from sales made by their customers who had not yet attained the status of "Qualified

25  Retailer."

26      10.     "Qualified Retailers" purchased the 12-part audiotape/cd series and seminar

27  ────────────────

28     [1] G1, G2, and G3 products were originally named Gateway 1, Gateway 2, and
Gateway 3 at the inception of Global Prosperity.

Indictment - 3
2000R01456

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1  tickets from Global Prosperity at wholesale cost (e.g. $125 for the 12-part audiotape/cd
2  series) and resold them at retail price (e.g. $1,250 for the 12-part audiotape/cd series).  In
3  its promotional materials, Global Prosperity advertised that a "Qualified Retailer" could
4  generate a six-figure income from home in four to six months.

5      11.   From the receipts of Global Prosperity, distributions in excess of
6  $10,000,000 were made to DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO
7  LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE for their personal use, benefit,
8  and enjoyment.

9      **The Structure of Global Prosperity**

10     12.   In order to conceal the business affairs and income of Global Prosperity,
11 DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA, KULDIP
12 SINGH, and DWAYNE ROBARE used six bogus trusts and related nominee bank
13 accounts to conceal the business operations of Global Prosperity. The bogus trusts and
14 related bank accounts were named:  Capital Finance Group (CFG); Educational
15 Publishing Systems (EPS); Independent Diversity Entrepreneurs & Associates (IDEA);
16 Alternate Ventures; International Free Enterprise Associates (IFEA); and Pacific
17 Dynamics Foundation (PDF).

18         a.   DANIEL ANDERSEN had signature authority over the bank
19 accounts he opened and maintained in the names of Capital Finance Group (CFG);
20 Educational Publishing Systems (EPS); and Independent Diversity Entrepreneurs &
21 Associates (IDEA).

22         b.   DAVID STRUCKMAN had signature authority over the bank
23 account he opened and maintained in the name of Alternate Ventures.

24         c.   LORENZO LAMANTIA and KUDLIP SINGH had signature
25 authority over bank accounts they opened and maintained in the names of International
26 Free Enterprise Associates (IFEA) and Pacific Dynamics Foundation (PDF).

27     13.   "Qualified Retailers" who ordered products from Global Prosperity initially
28 submitted their orders and payments to Capital Finance Group (CFG) and later to

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1  Educational Publishing Systems (EPS). Global membership fees were deposited into the

2  Alternate Ventures bank account. Members who wanted to subscribe to Global

3  Prosperity's teleconferencing system made application and payment to IDEA. Those

4  wanting to subscribe to the customer service program made application and payment to

5  IFEA.

6       14.    DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA,

7  KULDIP SINGH, and DWAYNE ROBARE shared in the profits of Global Prosperity

8  and further concealed distribution of those profits by depositing the proceeds into

9  secondary bank accounts in the names of bogus trusts and other nominee entities as set

10  forth below:

11       a.    DANIEL ANDERSEN received and deposited distributions from

12  Global Prosperity totaling approximately $3,700,000 to his secondary bank accounts in

13  the names of Dynamic Strategy Foundation (DSF) and The Atlas Group. DANIEL

14  ANDERSEN had signature authority over each of these bank accounts;

15       b.    DAVID STRUCKMAN received and deposited distributions from

16  Global Prosperity totaling approximately $5,100,000 to his secondary bank accounts in

17  the names of Crescent Moon Enterprises and Specktackular Holdings. DAVID

18  STRUCKMAN had signature authority over each of these bank accounts;

19       c.    LORENZO LAMANTIA and KULDIP SINGH received and

20  deposited distributions from Global Prosperity totaling approximately $2,500,000 to their

21  secondary bank accounts in the names of Pacific Dynamics Foundation, The Galt Group,

22  and Kaylo. LORENZO LAMANTIA and KULDIP SINGH had signature authority over

23  these bank accounts;

24       d.    DWAYNE ROBARE received and deposited distributions from

25  Global Prosperity totaling approximately $225,000 to his secondary bank account in the

26  name of Strategic Solutions. DWAYNE ROBARE had signature authority over this bank

27  account.

28  **Seminar Vendors**

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1    15.    Keith E. Anderson is an individual who owned and operated a business

2    named Anderson Ark & Associates (AAA). Keith E. Anderson authored the original G1

3    audiotape series entitled Gateway To Financial Freedom, which, among other things,

4    falsely claimed that an individual could voluntarily remove oneself from the jurisdiction

5    of the United States and the income tax laws by reclaiming one's "sovereignty." Keith E.

6    Anderson sold purported foreign trusts and related offshore bank accounts designed to

7    implement this false theory of sovereignty. DANIEL ANDERSEN and DAVID

8    STRUCKMAN endorsed Keith E. Anderson as the primary trust promoter at the Global

9    Prosperity seminars from 1996 through mid-1998.

10    16.    JVH is an individual who helped produce a 12-part audiotape/cd series that

11    replaced Keith E. Anderson's Gateway To Financial Freedom as Global Prosperity's G1

12    product. JVH's G1 audiotape/cd series also promoted a false theory of sovereignty. JVH

13    served as a keynote speaker at the Global Prosperity seminars through 2000.

14    17.    Dennis O. Poseley is an individual residing in Arizona who owned and

15    operated a business named Innovative Financial Consultants (IFC) that sold bogus trusts

16    styled as "Pure Trust Organizations." DANIEL ANDERSEN, DAVID STRUCKMAN

17    and LORENZO LAMANTIA endorsed Dennis O. Poseley and IFC as Global Prosperity's

18    primary trust promoter after Keith E. Anderson and Global Prosperity ended their

19    business relationship.

20    **B. The Offense**

21    18.    From as early as May 1996, through in or about May 2002, in the Western

22    District of Washington and elsewhere, the defendants,

23    **DANIEL ANDERSEN**

24    **DAVID STRUCKMAN**

25    **LORENZO ("ZO") LAMANTIA**
           **aka LORENZO MILANO**

26

27    **KULDIP SINGH**
           **aka KAY SINGH**
           **aka KAY MILANO, and**

28    **DWAYNE ROBARE**

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1  knowingly, intentionally, and unlawfully conspired with each other and others, known
2  and unknown to the Grand Jury, to defraud the United States by dishonest and deceitful
3  means by attempting to impede, impair, obstruct and defeat the lawful government
4  functions of the Internal Revenue Service (IRS) of the United States Treasury Department
5  in the ascertainment, computation, assessment and collection of revenue: to wit, income
6  tax.

7              **C. Purpose of the Conspiracy**

8      19.    The purpose of the conspiracy was to defraud the United States by utilizing
9  a system of bogus trusts, nominee bank accounts and other surreptitious means to conceal
10  the business of Global Prosperity and conceal millions of dollars of taxable income and
11  profits the defendants earned from Global Prosperity.

12              **D. Manner and Means**

13      The dishonest and deceitful manner and means by which the conspiracy was
14  sought to be accomplished included, among other things, the following acts that occurred
15  during the dates of the alleged conspiracy:

16      20.    It was part of the conspiracy that DANIEL ANDERSEN, DAVID
17  STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE
18  created, used, and maintained a system of bogus trusts and related bank accounts obtained
19  from Keith E. Anderson and Dennis O. Poseley to conceal the business of Global
20  Prosperity and its income. Although these bogus trusts had third-party trustees who
21  purportedly held legal title to the assets and income of the trusts for the benefit of named
22  beneficiaries, the trusts were in fact under the dominion and control of the defendants at
23  all times. DANIEL ANDERSEN, DAVID STRUCKMAN, LORENZO LAMANTIA,
24  KULDIP SINGH, and DWAYNE ROBARE owned the trusts and assets transferred to the
25  trusts and had signature authority over the related bank accounts.

26      21.    It was further part of the conspiracy that DANIEL ANDERSEN, DAVID
27  STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH, DWAYNE ROBARE, and
28  others known and unknown to the Grand Jury, directed customers to remit payment for

Indictment - 7
2000R01456

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1 ║ Global products and services to nominee entities named Capital Finance Group (CFG),

2 ║ Educational Publishing Systems (EPS), IDEA, Alternate Ventures, and IFEA and

3 ║ deposited said income into related bank accounts. The nominee entities were in fact

4 ║ bogus trusts owned and controlled by the defendants.

5      22.   It was further part of the conspiracy that profits earned from Global

6 ║ Prosperity were distributed to DANIEL ANDERSEN, DAVID STRUCKMAN,

7 ║ LORENZO LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE through a second

8 ║ layer of bogus trusts and entities.

9      23.   It was further part of the conspiracy that defendant DANIEL ANDERSEN

10 ║ opened, maintained, and had signature authority over secondary bank accounts located in

11 ║ the United States in the names of Dynamic Strategy Foundation and The Atlas Group into

12 ║ which he caused to be made deposits of his share of income earned from Global

13 ║ Prosperity and from which he made personal expenditures.

14      24.   It was further part of the conspiracy that defendant DAVID STRUCKMAN

15 ║ opened, maintained, and had signature authority over secondary bank accounts located in

16 ║ the United States in the name of Crescent Moon Enterprises and Specktackular Holdings

17 ║ into which he caused to be made deposits of his share of income earned from Global

18 ║ Prosperity and from which he made personal expenditures.

19      25.   It was further part of the conspiracy that LORENZO LAMANTIA and

20 ║ KULDIP SINGH opened, maintained, and had signature authority over secondary bank

21 ║ accounts located in the United States in the name of Pacific Dynamics Foundation, The

22 ║ Galt Group, and Kaylo into which they deposited their share of income earned from

23 ║ Global Prosperity and from which they made personal expenditures.

24      26.   It was further part of the conspiracy that defendant DWAYNE ROBARE

25 ║ opened, maintained, and had signature authority over a secondary bank account located in

26 ║ the United States in the name of Strategic Solutions into which he caused to be made

27 ║ deposits of his share of income earned from Global Prosperity and from which he made

28 ║ personal expenditures.

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1       27.    It was further part of the conspiracy that DANIEL ANDERSEN, DAVID

2 STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE

3 transferred portions of their respective income earned from Global Prosperity into various

4 nominee bank accounts located outside the United States over which they had signature

5 authority. These offshore bank accounts were maintained with Prosper International

6 League Limited, World Wide Investors Nominee, and Suisse Security Bank & Trust.

7 Some of these funds were brought back into the United States through wire transfers and

8 debit cards.

9       28.    It was further part of the conspiracy that DANIEL ANDERSEN, DAVID

10 STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH and DWAYNE ROBARE

11 took additional steps to maintain the anonymity of Global Prosperity and themselves

12 including periodically changing the name of the Global Prosperity organization, using

13 mail drops to conceal its location, conducting financial transactions in cash, and

14 discouraging the use of one's social security number to escape notice from various

15 government agencies including the Internal Revenue Service.

16       29.    It was further a part of the conspiracy that in an attempt to assist Global

17 Prosperity members in avoiding the IRS and record-keeping requirements of the United

18 States banking system, the defendant LORENZO LAMANTIA, through IFEA, assisted in

19 developing, exclusively for Global Prosperity members, Prosperitus International Credit

20 Union (PICU) a so-called private international credit union.

21       30.    It was further a part of the conspiracy that DANIEL ANDERSEN co-

22 founded a business named World Wide Investors Nominee (WWIN) that offered

23 exclusive offshore banking services for Global Prosperity members. WWIN was

24 designed to conceal the paper-trail generated from Global sales by conducting all

25 financial transactions offshore. Global Prosperity was able to conceal over one million

26 dollars ($1,000,000) in sales via this offshore payment system.

27       31.    It was further a part of the conspiracy that DANIEL ANDERSEN, DAVID

28 STRUCKMAN, LORENZO LAMANTIA and KULDIP SINGH did not provide to one

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1   another or report to the IRS through Forms W-2, 1099, Schedule K-1, or any other

2   statement or form, income distributions made to each other from the profits of Global

3   Prosperity.

4       32.    It was further a part of the conspiracy that DANIEL ANDERSEN

5   maintained business offices for Global Prosperity at 19 Brigham Street Unit 8,

6   Marlborough, Massachusetts in the names of EPS and IDEA and hired individuals to

7   perform administrative duties related to the business of Global Prosperity but did not

8   report to the IRS wages paid to EPS and IDEA workers and did not issue annual Forms

9   W-2 and/or 1099 to EPS and IDEA workers.

10      33.    It was further part of the conspiracy that DANIEL ANDERSEN, DAVID

11  STRUCKMAN, LORENZO LAMANTIA, KULDIP SINGH, and DWAYNE ROBARE,

12  did not file individual income tax returns; trust returns or trust statements; declarations of

13  a financial interest in, or signature authority over, a foreign bank account; corporate tax

14  returns; partnership returns; or Schedule C (sole proprietorship) filings as otherwise

15  required by law.

16                      **E. Overt Acts**

17      In furtherance of the conspiracy, and to effect the objects thereof, the following

18  overt acts, among others, were committed in the Western District of Washington and

19  elsewhere:

20      **Daniel Andersen Overt Acts**

21      34.    On or about April 15, 1996, DANIEL ANDERSEN purchased a bogus

22  foreign trust from Anderson Ark & Associates in the name of Capital Finance Group

23  (CFG). DANIEL ANDERSEN was named Treasurer of the trust and DAVID

24  STRUCKMAN the Secretary.

25      35.    On or about May 7, 1996, DANIEL ANDERSEN purchased a bogus

26  foreign trust from Anderson Ark & Associates in the name of Dynamic Strategy

27  Foundation (DSF). DANIEL ANDERSEN was named Treasurer of the trust and T.A.

28  was named Secretary.

Indictment - 10
2000R01456

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

1      36.    On or about June 26, 1996, DANIEL ANDERSEN opened a non-interest

2  bearing bank account in the name of Dynamic Strategy Foundation (DSF) at Enterprise

3  Bank in Leominster, Massachusetts that contained a false Tax Identification Number.

4  DANIEL ANDERSEN made personal expenditures utilizing funds deposited into the

5  DSF bank account including the following:

| Overt Act | Date of Purchase | Item Purchased | Amount | Check # |
|---|---|---|---|---|
| 36(a) | 5/2/97 | 1997 Dodge Ram Pickup | 29,195.85 | DSF check #156 |
| 36(b) | 7/2/97 | 1997 CMC Motorcycle | 26,700.00 | DSF check #169 |
| 36(c) | 3/31/98 | 3 Rolex Watches | 35,400.00 | DSF check #218 |
| 36(d) | 7/7/98 | Cartier Watch | 15,950.00 | DSF check #255 |
| 36(e) | 7/7/98 | 2 Rolex Watches | 18,500.00 | DSF check #278 |
| 36(f) | 1/20/99 | Tangible Asset Gallery - collector coins | 18,565.00 | DSF check #299 |
| 36(g) | 1/25/99 | Tangible Asset Gallery - collector coins | 30,000.00 | DSF check #301 |
| 36(h) | 11/29/99 | 2000 Dodge Durango | 16,228.64 | DSF check #399 |
| 36(i) | 2/29/00 | 2300 Peninsula Road, Oxnard, CA.- house | 256,263.00 | DSF wire transfer |
| 36(j) | 5/16/00 | Custom Clothing | 10,000.00 | DSF check #489 |
| 36(k) | 5/18/00 | Custom Clothing | 10,000.00 | DSF check #491 |
| 36(l) | 7/18/00 | Custom Clothing | 15,000.00 | DSF check #519 |
| 36(m) | 9/9/00 | 2000 Harley Davidson Motorcycle | 33,024.33 | DSF check #544 |

21      37.    On or about September 25, 1996, DANIEL ANDERSEN opened a domestic

22  bank account in the name of Capital Finance Group (CFG) at Enterprise Bank in

23  Leominster, Massachusetts.

24      38.    DANIEL ANDERSEN distributed profits from Global Prosperity to

25  DAVID STRUCKMAN, LORENZO LAMANTIA, and DWAYNE ROBARE by

26  remitting the following checks from the CFG bank account:

| Overt Act | CHECK DATE | PAYER | PAY TO | AMOUNT | CFG Check # |
|---|---|---|---|---|---|

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

| | | | | | |
|---|---|---|---|---|---|
| 38(a) | 10/21/96 | CFG | Crescent Moon<br>DSF | 6,666.66<br>6,666.66 | 114<br>115 |
| 38(b) | 11/28/96<br>11/31/96 | CFG | Crescent Moon<br>DSF | 60,000<br>60,000 | 134<br>136 |
| 38(c) | 12/13/96<br>12/13/96 | CFG | Crescent Moon<br>DSF | 45,000<br>45,000 | 139<br>140 |
| 38(d) | 1/2/97<br>1/2/97 | CFG | Crescent Moon<br>DSF | 20,000<br>20,000 | 150<br>151 |
| 38(e) | 3/18/97<br>3/18/97 | CFG | Crescent Moon<br>DSF | 60,000<br>60,000 | 199<br>200 |
| 38(f) | 4/1/97<br>4/1/97 | CFG | Crescent Moon<br>DSF | 60,000<br>60,000 | 207<br>208 |
| 38(g) | 4/28/97<br>4/28/97<br>4/28/97<br>4/28/97<br>4/28/97<br>4/28/97<br>4/28/97<br>4/28/97 | CFG | Crescent Moon<br>Crescent Moon<br>Crescent Moon<br>Crescent Moon<br>DSF<br>DSF<br>DSF<br>DSF | 25,000<br>25,000<br>25,000<br>25,000<br>25,000<br>25,000<br>25,000<br>25,000 | 235<br>236<br>237<br>238<br>239<br>240<br>241<br>242 |
| 38(h) | 5/12/97<br>5/12/97 | CFG | Crescent Moon<br>DSF | 50,000<br>50,000 | 265<br>266 |
| 38(i) | 6/1/97<br>6/1/97<br>6/1/97<br>6/1/97 | CFG | Crescent Moon<br>Crescent Moon<br>DSF<br>DSF | 50,000<br>50,000<br>50,000<br>50,000 | 280<br>281<br>282<br>283 |
| 38(j) | 7/24/97<br>7/24/97<br>7/24/97<br>7/24/97<br>7/24/97<br>7/24/97<br>7/24/97<br>7/24/97 | CFG | Crescent Moon<br>Crescent Moon<br>Crescent Moon<br>Crescent Moon<br>DSF<br>DSF<br>DSF<br>DSF | 50,000<br>50,000<br>50,000<br>50,000<br>50,000<br>50,000<br>50,000<br>50,000 | 389<br>390<br>391<br>392<br>393<br>394<br>395<br>396 |
| 38(k) | 9/18/97<br>9/25/97 | CFG | Crescent<br>DSF | 150,000<br>150,000 | Wire<br>439 |
| 38(l) | 10/24/97<br>10/24/97 | CFG | Crescent Moon<br>DSF | 100,000<br>100,000 | 528<br>529 |
| 38(m) | 11/1/97<br>11/1/97 | CFG | Crescent Moon<br>DSF | 100,000<br>100,000 | 539<br>540 |

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

| | | | | | |
|---|---|---|---|---|---|
| 38(n) | 1/19/98 | CFG | Crescent Moon | 50,000 | 597 |
| | 1/19/98 | | DSF | 50,000 | 598 |
| | 1/19/98 | | Crescent Moon | 50,000 | 599 |
| | 1/19/98 | | DSF | 50,000 | 600 |
| | 1/19/98 | | Crescent Moon | 25,000 | 601 |
| | 1/19/98 | | DSF | 25,000 | 602 |
| | 1/19/98 | | Crescent Moon | 25,000 | 605 |
| | 1/19/98 | | DSF | 25,000 | 606 |
| 38(o) | 2/11/98 | CFG | Crescent Moon | 50,000 | 684 |
| | 2/11/98 | | DSF | 50,000 | 685 |
| | 2/11/98 | | Crescent Moon | 50,000 | 686 |
| | 2/11/98 | | DSF | 50,000 | 687 |
| 38(p) | 3/5/98 | CFG | Crescent Moon | 100,000 | 718 |
| | 3/9/98 | | DSF | 100,000 | 719 |
| | 3/9/98 | | Crescent Moon | 100,000 | 720 |
| | 3/9/98 | | Crescent Moon | 100,000 | 722 |
| | 3/9/98 | | DSF | 100,000 | 723 |
| 38(q) | 4/17/98 | CFG | DSF | 50,000 | 758 |
| | 4/17/98 | | Crescent Moon | 50,000 | 759 |
| 38(r) | 5/19/98 | CFG | Specktackular | 50,000 | 861 |
| | 5/19/98 | | Specktackular | 50,000 | 862 |
| | 5/19/98 | | Specktackular | 50,000 | 863 |
| | 5/19/98 | | Specktackular | 50,000 | 864 |
| | 5/19/98 | | PILL #9490 | 100,000 | 865 |
| | 5/19/98 | | DSF | 100,000 | 866 |
| | 5/19/98 | | Specktackular | 50,000 | 867 |
| | 5/19/98 | | Specktackular | 50,000 | 868 |
| | 5/19/98 | | PILL #9490 | 50,000 | 869 |
| | 5/19/98 | | DSF | 50,000 | 870 |
| 38(s) | 3/5/99 | CFG | Specktackular | 15,000 | 1305 |
| | 3/5/99 | | DSF | 15,000 | 1306 |
| 38(t) | 5/24/99 | CFG | Pacallo Dynamic | 75,000 | 1387 |
| | 5/24/99 | | Specktackular | 50,000 | 1388 |
| | 5/24/99 | | Specktackular | 50,000 | 1389 |
| | 5/24/99 | | Specktackular | 50,000 | 1390 |
| 38(u) | 11/29/99 | CFG | Galt Group | 75,000 | 1579 |
| | 11/29/99 | | PILL #9541 | 75,000 | 1580 |
| | 11/29/99 | | PDF | 50,000 | 1581 |
| | 11/29/99 | | PDF | 50,000 | 1582 |
| | 11/29/99 | | Specktackular | 75,000 | 1594 |
| | 11/29/99 | | Specktackular | 75,000 | 1595 |
| | 11/29/99 | | Specktackular | 50,000 | 1596 |
| | 11/29/99 | | Specktackular | 50,000 | 1597 |
| 38(v) | 1/27/00 | CFG | DSF | 100,000 | 1722 |
| | 2/2/00 | | Specktackular | 100,000 | 1723 |
| | 2/2/00 | | PDF | 100,000 | 1724 |

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98101-3903
(206) 553-7970

| | | | | | |
|---|---|---|---|---|---|
| 38(w) | 4/17/00<br>4/17/00<br>4/17/00 | CFG | Ohio River Direct.-Drill<br>Specktackular<br>PDF | 18,999<br>19,000<br>19,000 | 1936<br>1937<br>1938 |
| 38(x) | 9/11/00<br>9/11/00<br>9/11/00 | CFG | DSF<br>PDF<br>Specktackular | 50,000<br>50,000<br>50,000 | 1953<br>1954<br>1955 |

39. On or about July 8, 1996, DANIEL ANDERSEN purchased a bogus foreign trust from Anderson Ark & Associates in the name of Independent Diversity Entrepreneurs Associates (IDEA). DANIEL ANDERSEN was named Treasurer of the trust and DAVID STRUCKMAN the Secretary.

40. In or about March 1997, DANIEL ANDERSEN obtained, under the sponsorship of DAVID STRUCKMAN, a bogus foreign trust from Prosper International League Limited (PILL) which was identified by the number "9490" along with a related offshore bank account and debit card. DANIEL ANDERSEN made personal expenditures utilizing funds placed in his offshore PILL account and related debit card including the following:

| Overt<br>Act | Date of<br>Purchase | Item Purchased | Amount | Check # |
|---|---|---|---|---|
| 40(a) | 2/16/99 | 1999 Winnebago<br>RV | 125,127.11 | Wire transfer from PILL<br>account |
| 40(b) | 2/28/99 | 1999 Fleetwood<br>Prowler Trailer | 20,903.64 | Wire transfer from PILL<br>account |

41. On or about April 28, 1997, DANIEL ANDERSEN opened a bank account in the name of Independent Diversity Entrepreneurs Associates (IDEA) at Enterprise Bank in Leominster, Massachusetts.

42. DANIEL ANDERSEN distributed profits from IDEA membership and subscription fees to DAVID STRUCKMAN and DWAYNE ROBARE by remitting the following checks from the IDEA bank account:

| Overt<br>Act | CHECK<br>DATE | PAYER | PAY TO | AMOUNT | IDEA<br>CHECK # |
|---|---|---|---|---|---|
| 42(a) | 6/1/97<br>6/6/97 | IDEA | Crescent Moon<br>DSF | 50,000<br>50,000 | 5<br>6 |

UNITED STATES ATTORNEY<br>601 Union Street, Suite 5100<br>Seattle, Washington 98101-3003<br>(206) 553-7970